3-16-0454, People of the State of Illinois, and I hereby make this Statement with reference to the Andrew Smith Account by Stephen Varel. Mr. Varel. Good afternoon, Your Honors. Counsel. I am Steve Varel, with the Office of State Appellate Defender, 3rd District, for the defendant upon, Adam Smith. May it please the Court, I have raised five issues in this case. First, that Andrew was not proven guilty beyond reasonable doubt of unlawful possession of a weapon by a felon. Second, that the trial court did not substantially comply with Rule 401A admonishments before allowing Andrew to go pro se for his trial in Sentencing. Third, that the trial court denied my client his right to a public trial when it excluded his mother from the voir dire proceedings. And his mother and father are with us, by the way, today. Third, the Zaire error occurred in this case where the trial court failed to make sure that all the jurors understood all of the Zaire principles. And the fifth issue that I've raised is that my client received an unauthorized extended term sentence on the lower class felony of aggravated fleeing or attempting to elude a police officer, which is class 4. And it was unauthorized because he was also convicted of two class 3 felonies, forgery and unlawful possession of a weapon by a felon. I'd like to go ahead and start with the 401A admonishments. At the time that Andrew Smith waived counsel in this case, the judge failed to provide him any admonishments whatsoever as to the sentencing range of the offenses. The judge also failed to explain the nature of the charges and failed to even name any of the charges at that time. Clearly, there was no compliance at all at that time. Now, it is true that at Andrew's first appearance in court several months before that, some sentencing information was provided by the judge. However, under the case law, that is not to be considered towards substantial compliance because it occurred months before Andrew was talking about waiving counsel and months before the waiver occurred. However, even if that information were considered, Andrew still was ultimately only told that he could be sentenced up to 10 years. And he ultimately received a sentence of 14 years. Now, under the 4th District's precedent in bars and coke, that is clearly a reversible error. Those two cases said emphatically that a waiver of counsel can never be valid if someone is not informed of the sentence that they actually received. They're not told they could get that sentence at the time that they waived counsel. Those two cases are consistent with the purpose of the rule, which is to make sure that you have a knowing voluntary waiver of counsel with the defendant formally being admonished by a judge that he could receive a sentence that he ultimately ended up getting. Therefore, this court reversed all of Andrew's misconvictions due to the error in the court's 401A admonishments. If there are no questions at this time as to that issue, I will go ahead and move on to our claim of error with respect to his sentence. As I said, he was clearly sentenced to an extended term on a lower class of felony than the most serious one of which he was convicted. Section 582 of the Uniform Code of Corrections clearly prohibits that. The Supreme Court has read an exception into that even though there's no language in the statute referencing this exception. They can do what they want. And they did in this case. And so now there is an exception where if there is a single course of conduct in which there is no substantial change in the defendant's criminal objective, an extended term can be imposed on the lower class felony. But that's not what we have here. Here, all the offenses were committed simultaneously. Assuming that the defendant is guilty of the charged offenses, as we must when we're talking about a sentencing issue, the defendant had the firearms at issue in his car and the counterfeit currency at issue in his car at the time that he was fleeing from police and disregarded two credit control devices, which were all the elements of the offense for aggravated fleeing or attempting to elude a police officer. So he's possessing them and fleeing. It's all happening simultaneously. There's no case, the State has not cited any case where something like that has been held to be a single course of conduct. And this Court should not expand the law, especially where it's not even in the statute. It would make sense to interpret the law. Was it simultaneously in a single course of conduct? So, sorry, I'm not sure if I explained it correctly, but it has to be if it's not a single course of conduct is when you could have the extended term. So if it is a single course of conduct, you cannot have an extended term sentence. So here, yes, it was happening simultaneously. It was all the same course of conduct. And there's no reason that an extended term sentence can be imposed on the lower class felonies. If there are no questions as to that issue, then I will proceed to our reasonable doubt issue. The reasonable doubt issue was to the offense of unlawful possession of a weapon by a felon specifically, not the other two offenses. And I've argued two alternative arguments with respect to that. One, that there was insufficient evidence that Andrew knew the shotguns were in the car. And second, that there was insufficient evidence that he intended to exercise control over the guns inside the car. As far as the. The shotguns were found in, they were where I found them was in a carrier for a lawn chair and another in a duffel bag or something. They were completely like concealed at the time they were tossed or they were found out in the ditch or wherever they were at, right? That's essentially correct, yes. There was an officer viewed it before it was tossed out of the car at one point and did not see any gun. And when they were on the ground, when they were ultimately found in the path that they had driven away, at a time when police did not see them, the guns were apparently tossed out of the car and they were found in bags. The handles were partially sticking out when they were on the ground. We don't know what condition they were in when they were inside the car, though. But we do know that an officer who initially performed a traffic stop in this case did have an opportunity to view inside the car and see some beer cans and other items inside the car and did not see any guns, which is clearly something that you'd expect the officer to attempt to identify because that could potentially be a threat when you're stopping someone. So, yes. And it was the brother's testimony that they were his or they were in his possession, that he had obtained them in Pennsylvania and that he didn't tell his brother that he had them? That's correct, yes. And the state, of course, acknowledged that Jeremiah was exercising exclusive possession over them. Of course, he pleaded guilty to possessing these two firearms. There's evidence that he was the one who stole them from a house next door to where Jeremiah lived. And so there's tons of evidence corroborating his testimony that he exclusively possessed these guns, and he did testify that Andrew did not know that the guns were in the car. Andrew also testified that he did not know that the guns were in the car. So essentially, we've got their uncontested testimony to that fact, and we've got nothing else connecting Andrew to the guns. No fingerprints, no physical evidence. There was really nothing to show that he knew that the guns were inside the car. As an alternative basis, I'd also argue that even if the state could somehow be inferred that he knew the guns were in the car, that wouldn't matter because, again, these are guns that Jeremiah was exclusively possessing. There's even a point where Jeremiah's father tried to take the guns from Jeremiah, and Jeremiah angrily demanded them back from him. So we have a situation here where, sort of like the McIntyre case, where you've got someone else in the car at the time who claimed responsibility for the guns, and there just would need to be more evidence than just knowledge that the guns were in the car and the fact that you're owning and driving the car. It needs to be actually proven that someone intends to exercise control over the guns, and typically one would not intend to exercise control over guns that someone else treated exclusively their own. So for that reason, I would ask that this Court reverse outright Andrew's conviction of unlawful possession of a weapon by a felon and reverse his other convictions for all the reasons that I've argued in my brief, in addition to the Rule 401A admonishments, and remand his case for a new trial. And in the alternative, if this Court has to reach a sentencing issue, then to reduce his sentence for the lower class, Class 4 felony of aggravated fleeing or attempted to elude a police officer to three years instead of six. And that concludes what I have. If Your Honors have any questions, I'd be happy to answer them at this time. Thank you, Mr. Carter. Thank you, Your Honors. Mr. Atwood. May it please the Court, Your Honors, Counsel. My name is Nicholas Atwood, and I represent the people of the State of Illinois in this matter. I think I'll just take it from the top as far as the issues go. The first issue in this case was whether or not the people proved the defendant guilty of the unlawful possession of a weapon by a felon charge. And the people don't concede that the defendant's brother exclusively possessed the firearm. And even if they had, two individuals can exclusively possess the firearms under the case law in this State. Notably, what we have here were two shotguns, not just one. It sort of stands to reason that there'd be no reason for one individual to bring two shotguns just for himself when there are two individuals in the vehicle. It makes more sense that these two each have a shotgun for whatever purpose they have them for. And when we look at constructive possession, which was the theory that the defendant was convicted on, we're looking first at knowledge and then whether he had the ability and the intent to control the area, not just control the firearm itself. That's actual possession, not constructive possession. We're looking at does this defendant control the area. And so we're looking at his knowledge first. What do we do to prove knowledge? You have to show that the defendant had the opportunity to be aware that this gun was there. What was his visibility in the area where the gun was found? How long did he have to look at it? And were there any furtive movements that might have suggested that he knew the gun was there? We can see there are no furtive movements here because during the illusion from the officers, the guns were thrown from the vehicle, so there was no way to know that the defendant may have thrown one of those vehicles out. But it does establish that the gun... Some of the case law doesn't, you know, act of trying to get rid of them, and some of the case law doesn't that demonstrate a lack of wanting to have exclusive control over the weapon when you're trying to get rid of it? I don't know of any case law that says that. I don't know that that's what the briefs discuss. There might be case law out there that says that. I think it mostly just exemplifies trying not to get caught with the weapon as opposed to, you know, all the conduct that occurred before the stop was made in this traffic case. But we've got a Nissan Versa vehicle. This is a compact car. There's no trunk. These are two full-size shotguns that are at least two feet in length. The defendant was in this vehicle with his brother for days on end, not just a matter of minutes. Counsel cites the McIntyre case and wants this court to follow that. But in McIntyre, we had a pistol. We had about 20 minutes, I think the court said, as far as the defendant's opportunity to be aware of the pistol. The pistol was stored first in the crotch of the passenger's pants, and then it was found later in between the passenger seat and the door in a plastic area where the defendant had no access to it at that time. That's clearly distinguishable from what we had in this case. And what we talked about in the brief is that the evidence showed that these two brothers stopped at various hotels along the way. It's obvious that they would have been taking items in and out of the vehicle, which was small to begin with. To imagine that you could miss two shotguns in a compact vehicle, it really the jury could easily infer that that wasn't accurate, because really all we had saying that was the testimony of the defendant and his brother, who were both convicted of felonies of dishonesty. And so there was really no reason for the jury to give that testimony more weight than the logical and reasonable inferences they could have made with regard to a common sense look. Could you really go days in this vehicle without noticing the presence of these weapons? And ownership of the vehicle, which the evidence established the defendant did own this vehicle, is prima facie evidence that he has the ability to exercise control over the firearm in there. I believe that's the Johnson case that says that. The final factor with the opaque nature of the containers, the case law says that the opaque nature of the containers alone is not sufficient to say that he doesn't have knowledge that these shotguns were there, especially given the obvious inference that they were moving items in and out. After all, they had to use this HP printer that was in the back of the vehicle to print the fake currency that they later tried to pass off at the various establishments that they did. Clearly they couldn't have printed that from inside the vehicle. They would have had to go in and have a power source in the hotel rooms, and so it's obvious they would have been moving items in and out of the vehicle. So I think that it was clear that the people proved that beyond a reasonable doubt, because the jury did not have to believe the testimony of the defendant and his brother. With regard to the waiver of counsel issue, with this issue, the defendant was not apprised of his sentence before he waived his counsel. But we don't have to have strict compliance with this rule. We only have to have substantial compliance. And it's very clear from the record the defendant knew he had a right to counsel, and it's very clear from the record that he understood what the nature and elements of the charge were. In fact, he was successful in getting a not guilty verdict on the strictest charge that he faced, the aggravated unlawful possession of a stolen weapon. So it was clear that he had this knowledge of those issues. With regard to the sentence, he didn't know the correct sentencing range before he waived counsel, but he was informed of it a week beforehand, before the trial started. That was after he waived. And so the issue here is he's also got to show that he was prejudiced by the Court's failure, not just substantial compliance, but also that the Court's failure to comply with the rule prejudiced him. And he had the opportunity to ask for counsel before moving to trial, but he didn't do so. So I think it's clear that the defendant's indicating by his own actions that he's not prejudiced by this. I think it's also worth noting that throughout these proceedings, the defendant was very preoccupied with his speedy trial right. His sentence was not a motivating factor for him representing himself. He had alleged problems with his communications with prior counsel, and he had alleged the speedy trial issue throughout. So the sentence is really just an afterthought that's being raised for the first time on appeal, and I don't really think that it factored into his decision to proceed pro se. I think for all those reasons, we can look at the Maxie case, which talks about an improper sentencing range, the defendant not being aware of the proper sentencing range when he waived. And the Maxie court still found substantial compliance, and one of the things that they relied upon in that case was the legal sophistication of the defendant. In that case, he might have been a paralegal or something like that. Now, we don't have that level here. What we do have is a defendant who was more successful than the defendant in Maxie because he actually got off on the most difficult charge, whereas the defendant in Maxie actually failed in getting his evidence suppressed. Moreover, the defendant has an extensive criminal record. He's very well informed with what happens, and based on the record and his comments throughout, he was heavily involved in the defense of his case from start to finish. And so I think it really shows that he understood what he was doing here, he understood what the ramifications would be, and yet he still proceeded anyway. And I think under Maxie and under Wright, this misinformation regarding the sentencing range is not dispositive of whether or not he knowingly and voluntarily waived his counsel, which is the real issue here. We're trying to find out if this was knowingly and voluntarily, and I think given these facts, it was. With regard to the closed courtroom and the public trial nature, the defendant bears the burden of showing that this was more than just a trivial error if it was an error at all. One of the things that was talked about was obviously this Court's decision in Radford and the Weaver case from the Supreme Court. And the Weaver case was a slightly different context. They were doing that in an ineffective assistance of counsel claim. But in this claim, we've got a forfeited error because it wasn't properly preserved. And so when we're doing a plaintiff. Isn't it evident to say that this is not, you know, the entirety of voir dire is not for a trivial closure? It sort of establishes that, you know, the voir dire is an important part. It isn't trivial in nature, and it's the entirety of voir dire that the courtroom is closed. Yeah, voir dire itself is not trivial, but if it was an error to close it, is that trivial? And I think the Weaver court talks about the adversarial portion of this trial was always open to the public. And with regard to the voir dire, there were 29 members of the public who were not ultimately selected as jurors who were present. And importantly, when we're talking about showing triviality, like I said, in the context of a plain error, it's very similar to an ineffective assistance of counsel. Ineffective assistance of counsel, you've got to make that proof as a defendant. In plain error, you've got to show. Have you seen the people in the voir dire with the public? They was mentioned either in Radford. That was a public trial. They were part of the public. In Radford and in Weaver, in one of those cases, it is mentioned. One of them would have been there had they not been noticed to be on the jury. It's entirely possible that they wouldn't have been. And I recognize that I believe you just censored in Radford or one of the related cases. And I recognize that these people didn't voluntarily show up, but that doesn't change their status as members of the public. They were still there. And I think what's the most important factor in this is not just that, you know, the defendant's friends or family are present. There are members of the public. And the reason we have this fundamental protection of a public trial is to avoid, you know, problems with the courtroom procedure, to remind the judge and the prosecutor of what their roles are, to encourage people to come forward as witnesses, to avoid perjury. The defendant never alleged that any of those things occurred in this case. I know that the trial court didn't make any findings of the necessity of closing this courtroom. Didn't look at any alternatives. Didn't do any of those things that, you know, have been required for quite some time. I mean, this isn't new. These aren't new requirements. Didn't make any findings. Yeah. Certainly that was an error on the court's part in that it should have made those findings. But the problem is the court wasn't given an opportunity to make those findings by a contemporaneous objection. In his brief, the defendant argues there was no contemporaneous objection to this procedure because it would have fallen on deaf ears because the court had made it a standard practice to exclude the public during voir dire. And that's where, in our brief, we had mentioned there was no actual proof that any members of the public actually left. It is possible that, though the court said you should leave, perhaps there was space and the mother stayed or other members of the public were there. But importantly, not giving the court that opportunity to object prevented it from making these findings on the record or perhaps accommodating the defendant in another way. In addition to that, the court had modified its trial practices before because when the defendant objected during voir dire, it removed jurors so the defendant could make his arguments. And if I recall, that happened also during the trial, which is not standard procedure for voir dire. So it was clear that the court would have been willing to make those findings if it had been given the opportunity to do so. However, absentmindedly, the trial court did not initiate or offer those findings on its own accord on the record. Well, when a trial judge is going to close a court, that trial judge certainly has the opportunity to explain why he or she is doing it, right? Correct. Without an objection because we know the importance of public trials and stuff. So, or you can ask BOSAC any objection to that or something like that. Certainly. Especially in a criminal trial, there's nothing prohibiting the trial court from making a record of something that any reasonable trial judge ought to know is going to draw some problems on review. Certainly. And that would have been the best practice. But, you know, the ultimate thing, what it boils down to is, is it not, is it a trivial error or not? Was there some prejudice to the defendant by this practice? Because the Weaver court said not every violation of a public trial affects a And in this case, there's just, there's not a shred of evidence to support that this is anything more than just a trivial error on the trial court's part. The selection of the jury is much greater than the trivial part of the trial. And, you know, depending on what jurors you get, it's a difference between the guilt and innocence and how they view and weigh the testimony and the evidence that's presented. And when you say, I mean, to say that the other, all the members of the, of the veneer, the veneer men are members of the public. Well, they're, they're subject to the proceedings. So the public trial applies to them too. The ability to have, you know, the public there to see all the proceedings because they're not there as members of the public. They are subject to the authority of the court while they're in that room. And I don't think that that you can say that they're there and that they are protecting the defendant's rights. As, as members of the public of a public trial. I just, I think that, you know, to say that that part isn't a significant part of the trial, I think is, is, is dangerous to say. I've probably been unclear. I'm not saying that voir dire is an insignificant or trivial part of the trial. It's not. But the Weaver court and the Raffer court have considered by specifically mentioning that it wasn't during the adversarial portion that perhaps some parts of trials are more, need to be more protected with this fundamental right to public trial than other parts of the trial would be. I mean, they specifically mentioned it because it must carry some weight. And I think by definition, you know, the jurors are compelled to be there, but they're there because they are members of the public. It's the public that is going to sit in judgment of this defendant. I don't think their status changes merely because they were ordered to come in. Whether they would have gone voluntarily or not, it doesn't change the fact that they're still members of the public. And we have no evidence that there wasn't any member of the press or anything like that who could have been standing off to the side and was present throughout. And that was another factor that was mentioned where there was just no evidence whether these people were asked to leave. I think there's not a sufficient record to make that determination, especially when there's no allegation that this actually prejudiced the defendant. I'd like to briefly. Let me ask you this. In that regard, how do you prove, how does the defendant prove that he was prejudiced by the closure of voir dire? Well, they talk about the four factors that the public trials are trying to protect. If you want to prove prejudice, you've got to allege that one of those things occurred and it occurred as a result of this voir dire being closed. I think that's what the court is calling for by specifically enumerating those factors. With regard to the 431B issue, I'd like to briefly touch on that. A defendant cited a case called People v. Daniel in his reply brief. It's a second district case. And one of those, it said something really interesting in that case to me. It talked about acceptance and asking for acceptance implies understanding. And in this case, we had the court preface the veneer with, you know, it's important that you understand these principles. And then the two specifically complained of jurors were asked, do you agree and accept these principles? Will you apply and accept these principles? Is that my time? Okay. I wasn't sure. So I think what we get here is a situation where these jurors' understanding is implied by their response. The call to question was, do you understand by accepting this principle? And so I think what we have here are jurors that are accepting that it's important that they understand these principles. And I think in any event, even if you think that's an error, it's a harmless error because the evidence clearly showed the defendant was guilty of the one issue that he did raise, which was the unlawful possession of a weapon by a felon charge. But what wasn't raised were the forgery conviction and the fleeing and eluding. All of those are still standing convictions. The defendant doesn't challenge that those weren't convicted beyond a reasonable doubt. And I think what makes the error harmless is the fact that we had Class III and IV felonies amongst those as well. So even if you found that the unlawful possession of a weapon by a felon charge was closely balanced, because we had a Class III with the forgery and Class IV with the aggravated fleeing and eluding, the sentencing range is going to remain the same. And so even if the 431B issue was wrong, even if the evidence was closely balanced on Issue 1, which we don't believe it was, it's still a harmless error because there are multiple other convictions to rely on resting in the background. And if I may briefly conclude, one thing I wanted to mention about that, if this Court finds the evidence wasn't closely balanced on that one issue, I think the ultimate remand on this case would be for simply a trial on that issue, because there's no evidence at all that the other convictions weren't proven beyond a reasonable doubt. And with that, I would ask this Court to affirm the defendant's conviction and sentence. We'll rest on our brief on the sentencing issue unless there are any questions with regard to that. Thank you. Mr. Verrill. I see that Your Honors find the public trial issue to be interesting. And, you know, I would say more about that. The case is pending in the Supreme Court on that particular issue at this time now. So I think I'll – I have a question. Should we wait for that Supreme Court judiciary status? The current status is that the defendant's brief has been filed. The State's brief is due on Monday. And oral argument will likely be held in November. And the decision, I would assume, would come out some number of months after that. Which case is that? That's Peeble v. Tavares-Grafton. Let me ask you this. Because you're right, it is an important issue. But on this record, we said the judge said – how do we even know that his mother left? The judge specifically ordered her to leave. I mean, I think that's an indication that she did so. It's not all that different from what happened in Peeble v. Radford where the judge ordered people to leave. I'm trying to remember because I get these cases diffused. But is this the one – did the judge say, it's my policy that family members aren't in the courtroom during a bar mirror? In this Andrew Smith case? In this case. That was not specifically said, no. My argument on that was essentially based on some of the language in the majority decision in the Radford case where the court said that the Evans in Peeble v. Radford showed up for the jury selection, the step-grandmother of the defendant, and that person was asked to leave. And this court said that that showed that the court had a policy of excluding people. And so that's essentially – my argument here is based on that language in Radford that, well, if that's a policy, then this is a policy because the only person who was there was asked to leave. So that's the main reason I said this is distinguishable. In addition to the fact that, well, that is a reason because in Radford there were two people – or four people, members of the public who were allowed to remain. And here there were none. Essentially the only person who was there was asked to leave. So – The only person he ordered to leave was the mother. Yes. Were there other members of the public that weren't there in the courtroom? The father was also there and asked to leave, although the father was a potential witness. So some of the case law has said that that's acceptable. Now, I'm not quite sure the rationale for excluding a potential witness from jury selection rather than portion of the trial where evidence is being presented. However, there is case law that suggests that. Well, what about just non-relatives? Was there anybody else, other members of the public, that weren't either family members or part of the veneer? There's no indication in the record that anyone else was there. In terms of one of the points of statement, though, is we should remember that the court has a constitutional obligation to make findings. I mean, it's not just it would be nice for the court to do that. The Constitution requires the judge to do that. So that's clearly an error. In any event, I'd like to move on to the admonishment issue again. And, you know, the State is the State's interpretation of the law on that point essentially eliminates the requirement that a defendant be told of the sentence. I mean, the rule clearly states the defendant is supposed to be informed of the sentencing ranges for the offense. And if it goes to the point where they don't even have to be told that they could receive a sentence as long as they got, then why is that in the rule? I mean, it's overruling Rule 401A, essentially. So this court should not be persuaded by that particular. Okay. In terms of the reasonable doubt argument, I would just like to briefly respond to, you know, the State suggested that it was not conceded that Jeremiah exclusively possessed these guns, but the prosecutor told the jury that Jeremiah exclusively possessed the guns and said that we acknowledge he possessed the guns. But this is a case where we're arguing that there's joint possession. And so it was clear that Jeremiah possessed the guns. He also pleaded guilty to possessing the guns. Most of the State's other arguments essentially rest on speculation. They're assumptions. They're not actual reasonable inferences that can be made from the evidence that was presented. The evidence was simply insufficient. And its distinguishing of McIntyre is essentially irrelevant because a lot of that had to do with, you know, the reason I cited McIntyre was for my alternative argument, that even if he knew the guns were there. So the extent of the State was talking about the potential knowledge of the defendant McIntyre. The McIntyre court, what it said was, even if the defendant knew the guns were there and was the owner and driver of the car, it didn't matter because he did know the guns were there in that case. He knew the guy, his passenger, got out and shot the gun and then got back in and put the gun in the passenger seat, and then he drove away with the guy. And so just the fact that there's knowledge of the guns is what that case said, does not mean, does not put everyone, does not put the driver, owner and driver, into possession of all the guns that could potentially be possessed by a passenger. So this court should, therefore, reverse all the defense convictions, reverse outright his own offense, remove him by filing, or in the alternative, reduce his sentence. All right. Thank you, Mr. Farrell. Thank you, counsel. Mr. Atwood, thank you, too. This matter will be taken under advisement and a written disposition will be issued and will be on a brief recess for a penalty for the last case.